**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 17-20063-CIV-MORENO**

NABOR DIEGO
And other similarly situated individuals,

      Plaintiff(s),

v.

VICTORY LAB, INC.
A Florida Profit Corporation

      Defendant(s).
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, VICTORY LAB, INC. ("VICTORY LAB") by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7.1 and 56.1 of the Local Rules of the United States District Court for the Southern District of Florida, hereby moves for summary judgment against Plaintiff, NABOR DIEGO ("DIEGO"), and states as follows:

**I.**     **INTRODUCTION AND FACTUAL BACKGROUND**

DIEGO's First Amended Complaint (DE 11) contains two counts.  Count I alleges that DIEGO was a non-exempt employee of VICTORY LAB and that he is entitled to overtime pay pursuant to the Fair Labor Standards Act ("FLSA").  In Count II, DIEGO alleges a whistleblower claim under Florida's Private Whistleblower Act ("FWA").   In response, VICTORY LAB asserts that DIEGO *was not an employee* of VICTORY LAB and that he is not entitled to the protections afforded by the FLSA or the FWA.

DIEGO provided political canvassing services on and off for VICTORY LAB as an independent contractor for a very short period from July 28, 2016 to September 8, 2016. (DE 11 at

1

¶13).   VICTORY LAB was created for the sole purpose of campaigning for the former Florida Republican State Senator Miguel Diaz de la Portilla ("Senator de la Portilla") and the re-election campaign of Senator Anitere Flores.[1] (Facts at ¶1).[2] VICTORY LAB contracted with the Florida Republican Senatorial Campaign Committee, a Political Action Committee ("PAC"), and does not conduct business in any other states. *Id.* VICTORY LAB's canvassing contract with the PAC ended when the election concluded on November 8, 2016. (Facts at ¶2).  As such, VICTORY LAB was created for a short period of time and had no employees and no relationships with independent contractors after the election ended on November 8, 2016.  *Id.*

Upon agreeing to become a canvasser, DIEGO received a packet including, among other things, a written independent contractor agreement; however, DIEGO never signed and returned the documents in the packet. (Facts at ¶10). DIEGO did, however, execute a W-9 Form indicating that he was being paid as an independent contractor and he was aware that no withholding tax would be deducted from his pay. (Facts at ¶9). Gracie Montenegro, who acted as the field manager for VICTORY LAB, was the contact person for DIEGO and the other canvassers contracted by VICTORY LAB. (Facts at ¶6).

VICTORY LAB did not have a set schedule for the canvassers; rather, they were free to work as many or as few hours as they chose. (Facts at ¶7). Ms. Montenegro would text canvassers the location of the canvassing area each day, allowing each canvasser, including DIEGO, to decide whether he or she wanted to work on any given day. *Id.* Canvassers would then respond to Ms. Montenegro if they wanted to canvas that day. *Id.* However, Canvassers were not required to notify

---

[1]Canvassing is the initiation of direct contact with voters commonly used during political campaigns. Canvassers knock on doors to identify supporters, persuade the undecided, and to pass out pamphlets on the candidate.
[2] Defendant's Statement of Undisputed Material Facts will be cited as ("Facts at ¶____").

2

VICTORY LAB if they chose not to work on any given day. When they chose to canvas, the canvassers met at a specified location, such as a Publix or gas station parking lot, and Ms. Montenegro supplied the canvassing area that was provided to her from the PAC. *Id*. The canvassers, including DIEGO, spent the day driving around knocking on doors talking to voters, gathering information and handing out pamphlets. (Facts at ¶8).

DIEGO was required to use his own motor vehicle, pay for his own gas, and to use his own cellphone in order to provide the canvassing services. (Facts at ¶5). DIEGO, at the same time in which he was canvassing, also worked on and off as a driver for Uber. (Facts at ¶11). Canvassers received no benefits of any type from VICTORY LAB. DIEGO was paid $15.00 per hour and, later, $16.00 per hour for his canvassing services, but if he was the driver for other canvassers, DIEGO was paid $19.00 per hour. (Facts at ¶5).

DIEGO was a problem for VICTORY LAB from the beginning. Canvassers had complained about him because his wife was extremely jealous and had been texting female canvassers. (Facts at ¶¶12 and 13). On or about August 19, 2016, DIEGO showed up late to canvas on a day when he was the designated driver of other canvassers. *Id.* Another driver was chosen in his absence. *Id.* DIEGO became angry that he was not going to be the driver and simply left. *Id.*  DIEGO then turned in his nametag and told Ms. Montenegro that he quit. *Id.* Thereafter, DIEGO and his wife began texting Ms. Montenegro incessantly and asked if he could continue canvassing because they had a family with small children and needed the money. (Facts at ¶15). Ms. Montenegro agreed to let DIEGO come back on or about August 30, 2016. *Id.* However, after DIEGO resumed canvassing, Ms. Montenegro again began receiving complaints from female and male canvassers

3

that DIEGO's wife was again calling the canvassers about DIEGO and his whereabouts due to her jealousy. *Id.*

Sometime between August 19 and August 30, 2016, after DIEGO quit, DIEGO allegedly showed up at Senator de la Portilla's office and caused a scene. (Facts at ¶¶12 and 14). Due to the complaints that Ms. Montenegro received from other canvassers and Senator de la Portilla's office informing her of the scene DIEGO caused, Ms. Montenegro determined that DIEGO could no longer provide canvassing services for VICTORY LAB. (Facts at ¶16). On September 8, 2016, Ms. Montenegro and her assistant, Luis Rodriguez, met with DIEGO at a Starbucks and informed him that his services were no longer needed. *Id.* During this meeting, DIEGO denied going to the Senator's office. (Facts at ¶17). In fact, according to his testimony, DIEGO states that he denied ever going to Senator de la Portilla's office and was told that "if [he] didn't tell them the truth [he] was going to be fired." (Diego Dep. 25-26:25-1). After being given an opportunity to tell the truth, DIEGO continued to deny contacting Senator de la Portilla's office and, as a result, his contract with VICTORY LAB was terminated. Following the termination of his contract, DIEGO threatened to make Senator de la Portilla look bad by alleging the campaign had illegal canvassers, that he would get Ms. Montenegro fired and that he would go to the "labor department." (Facts at ¶17).

VICTORY LAB is entitled to summary judgment on both counts of DIEGO's First Amended Complaint because he was never an employee of VICTORY LAB, which is a requirement to seek protection under the FLSA or the FWA. Additionally, based on the evidence presented in this motion, DIEGO cannot prevail on his FWA claim because he did not make a protected complaint directly to VICTORY LAB. Furthermore, he was not working for VICTORY LAB at the time he went to Senator de La Portilla's office and made false accusations about illegal

4

aliens.  Finally, at the meeting in which DIEGO's services were terminated, *by his own admission*, DIEGO *denied* that he had gone to the Senator's office. It was only *after* his contract was terminated that DIEGO shared with Ms. Montenegro his threats and false allegations that VICTORY LAB had used illegal aliens as canvassers.  On these facts, DIEGO's FWA claim fails and VICTORY LAB is entitled to summary judgment on Count II of DIEGO's First Amended Complaint.

## II.   ARGUMENT

### A.   The Court Lacks Subject Matter Jurisdiction As It Relates To Plaintiff's FLSA And FWA Claims Against VICTORY LAB Because VICTORY LAB Was Not Plaintiff's Employer

As a threshold issue to bringing a claim under the FWA, a plaintiff must show that the defendant was his or her employer. *See* Fla. Stat. § 448.102 ("An *employer* may not take any retaliatory personnel action against an employee because the employee has [engaged in protected activity]" (emphasis added). It is axiomatic that if VICTORY LAB was not the employer of DIEGO, then there is no basis for a claim alleging a violation of the whistleblower statute. Florida courts have held that the definition of "employer" in section 448.101(3) of the private sector whistleblower act is unambiguous, and have declined to construe the term in any way to include independent contractors in that definition. *See e.g., Morin v. Florida Power & Light Co*., 963 So. 2d 258, 261 (Fla. 3d DCA 2007) (citations omitted).

Likewise, the FLSA's "broad" definitions of employer do not bring "independent contractors" within the FLSA's ambit. *Scantland v. Jeffry Knight, Inc*., 721 F.3d 1308, 1311 (11th Cir. 2013).  In determining whether a worker is an employee or an independent contractor for the purpose of application of the FLSA, courts employ the "economic realities test" which considers:

5

(1) the nature and degree of control of the workers by the alleged employer; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the working relationship; and (6) whether the service rendered is an integral part of the alleged employer's business. *Santelices v. Cable Wiring,* 147 F.Supp.2d 1313, 1319 (S.D. Fla. 2001). No one factor is dispositive and the test is based on the totality of the circumstances. *United States v. Silk,* 331 U.S. 704, 716 (1947). The determinative factor of the "economic realities test" in analyzing a possible employee/employer relationship for purposes of the FLSA is whether the worker is dependent upon the business to which he or she renders service. *See Weisel v. Singapore Joint Venture, Inc.,* 602 F.2d 1185, 1189 (5th Cir.1979); *Usery v. Pilgrim Equipment Company, Inc.,* 527 F.2d 1308, 1311 (5th Cir.1976), cert. denied, 429 U.S. 826 (1976); *Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297, 299 (5th Cir.1975).[3]

Whether an individual is an employee or independent contractor is a question of law. *Patel v. Wargo,* 803 F.2d 632, 634 n. 1 (11th Cir.1986); *Harper ex rel. Daley v. Toler,* 884 So. 2d 1124,

---

[3] Relying on the RESTATEMENT (SECOND) OF AGENCY § 220, Florida follows the common law tests to determine whether an individual is an employee or independent contractor. *See Cantor v. Cochran,* 184 So.2d 173, 174-75 (Fla. 1966). Those factors include (a) the extent of control which, by the agreement, the master may exercise over the details of the work; (b) whether the one employed is engaged in a distinct occupation or business; (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (d) the skill required in the particular occupation; (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (f) the length of time for which the person is employed; (g) the method of payment, whether by the time or by the job; (h) whether the work is a part of the employer's regular business; (i) whether the parties believe they are creating the relation of master and servant; and (j) whether the principal is in business. *Id.* As the tests are similar, if DIEGO is an independent contractor under the economic realities test, he should also be an independent contractor under the common law test.

1129 (Fla. 2d DCA 2004) (If the undisputed facts demonstrate the nonexistence of an employment relationship, as a matter of law, there is a proper basis for granting summary judgment).

> **1.** ***DIEGO and other canvassers are not economically dependent on VICTORY LAB and are not employees as a matter of law.***

Canvassers were retained by VICTORY LAB for a very short duration to work for the Republican re-election campaign of former Senator de la Portilla to solicit votes for him. The canvassers did not work directly for former Senator de la Portilla and VICTORY LAB was not hired directly by the Senator. Rather, VICTORY LAB contracted with a PAC to supply canvassers to solicit votes, identify specific voters, or to persuade voters on the candidate. Canvassers elected whether to work on any given day and were not required to notify VICTORY LAB if they chose not to work on any given day. Ms. Montenegro would text canvassers the location of the canvassing area. Canvassers, including DIEGO, would text Ms. Montenegro if they wanted to canvas that day. When they chose to canvas, the canvassers met at a specified location, such as a Publix parking lot, and the field manager, who for this campaign was Ms. Montenegro, supplied the canvassing area. The designated canvassing area for the day is determined by the PAC, not VICTORY LAB. However, simply being instructed on the canvassing area is not significant control. *Aimable v. Long & Scott Farms*, 20 F.3d 434, 441 (11th Cir. 1994) (control arises only when the purported employer goes beyond general instructions, and begins to assign specific tasks, to assign specific workers, or to take an overly active role in the oversight of the work). The canvassers, unsupervised, then drove to different places throughout the day and went door-to-door within that designated area, passed out pamphlets and kept detailed records of what occurred at each house, such as whether anyone answered the door and the outcome of the contact.

7

DIEGO was also working as a driver for Uber, another independent contractor position, at the same time he was canvassing for VICTORY LAB.  DIEGO drove his own motor vehicle if he was the driver for the day and paid for his own gas.[4]  He also used his own cellphone to communicate with Ms. Montenegro and downloaded an application on his own phone to keep track of his hours. *See e.g. Murray v. Playmaker Services, LLC*, 512 F.Supp.2d 1273, 1277-78 (S.D. Fla. 2007) (individual, who made her own hours, was not required to be at work for any minimum or maximum hours, worked independently and used her own motor vehicle to pound the pavement selling playground equipment, was an independent contractor). The canvassers all solicited together and rode together in one of the canvasser's motor vehicles, unsupervised by VICTORY LAB. When DIEGO was the driver, his payment for canvassing was $19 per hour and, if he was not the driver, his payment was $15 per hour, which was later increased to $16 per hour.  DIEGO received no benefits from VICTORY LAB.  (Diego Dep. 29:8-10). DIEGO testified that he received no training to do his job; rather, he had to "work blindly."  (Diego Dep. 30:13-22).

Perhaps most telling, DIEGO understood that his canvassing assignments would end after the election. (Diego Dep. 22:4-8).  In fact, he began working in July 2016 and believed that his work would end in September 2016.  *Id*. VICTORY LAB ceased to have any canvassers or any other employees once the election took place. (Facts at ¶2).  VICTORY LAB's contracts with a PAC are short-lived. Thus, DIEGO could ***not*** have been economically dependent on VICTORY LAB's business as his primary employer.  *See e.g., Donovan v. Brandel*, 736 F.2d 1114, 1117 (6th Cir. 1984) (finding harvesters having only a temporary relationship for the 30-40 day harvest season do not have a relationship of a permanent nature even if they returned to harvest on other

---

[4]Notably, DIEGO had a minor accident on one occasion and was responsible for paying for the repairs.  (Diego Dep. 29:5-7).

8

occasions); *Baker v. Flint Eng'g & Const. Co*., 137 F.3d 1436, 1442 (10th Cir.1998) ("[I]ndependent contractors often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas employees usually work for only one employer and such relationship is continuous and of indefinite duration.")[5] *See also*, *Wilson v. United Farm Bureau Mut. Ins. Co*., No. IP 93–1460–C H/G, 1995 WL 378521, *8 (S.D. Ind. Jun. 15, 1995) (noting that an individual is more likely an independent contractor when the services are provided for a shorter period of time or for performance of certain goal). In this case, at the conclusion of the election DIEGO's services were no longer needed.

Based on the analysis of the foregoing, under the totality of the circumstances, DIEGO was properly classified as an independent contractor and he is not entitled to the protections of minimum wages or overtime under the FLSA.

> **2. *DIEGO is not an employee covered by the FWA and his claim fails for that reason.***

In addition to not being an employee under the economic realities test for purposes of the FLSA, DIEGO is also not an employee under Florida's common law test.  Florida courts have found that individuals are independent contractors when the putative employer exercises little control and does not withhold social security and Medicare taxes, or withhold federal income tax from the individual's pay. *See e.g.*, *US. Tel. Co. v. Dept. of Labor and Employment Security*, 410 So. 2d 1002, 1003 (Fla. 3d DCA 1982) (finding telephone company salesmen, who worked in

---

[5] The second factor, opportunity for profit and loss, is inapplicable in this case because DIEGO was not selling a commodity on behalf of VICTORY LAB. The sixth factor, integral to employer's business, may be the only factor supporting employee status, but is clearly outweighed by all of the other factors favoring a determination of independent contractor status.

designated areas, were independent contractors where they worked under little supervision and had no training and no social security or income taxes were withheld).

Similar to the instant case, in *VIP Tours of Orlando, Inc. v. State, Dept. of Labor & Employment Sec., Div. of Employment Sec.*, 449 So. 2d 1307, 1310 (Fla. 5th DCA 1984) the court found that the putative employer had no right of control over the tour guides other than to require them to show up at a particular place at a particular time wearing a uniform to identify the tour guides. *Id.* The tour guides in *VIP Tours* travelled in the putative employer's transportation. *Id.* This case is similar in that the canvassers met at a parking lot at a designated time and were given a particular area to canvass, which was the extent of the instructions from VICTORY LAB., Other than that, the canvassers controlled their own time. Indeed, the facts here weigh even more heavily for independent contractor status than in *VIP Tours* because the canvassers used their own motor vehicles and cellphones and were not required to wear a uniform.

Based on the foregoing, it is clear that DIEGO was an independent contractor under Florida's common law test and, as such, he cannot sustain a claim under the FWA.

**B.      DIEGO's Whistleblower Claim (Count II) Also Fails Because DIEGO Did Not Report Any Alleged Illegal Activity To VICTORY LAB During The Time He Provided Services.**

DIEGO's First Amended Complaint alleges that he made a complaint to Senator De La Portilla's office "to an assistant named Leslie" contending that VICTORY LAB was hiring undocumented workers in violation of state and federal law.  (DE 11 at ¶¶ 15 – 17).[6]  Notably, it is undisputed that DIEGO ***never complained*** directly to VICTORY LAB as is required under the FWA.  DIEGO alleges that his protected conduct falls under Section 448.102 (3), Fla. Stat., because

---

[6] VICTORY LAB denies his allegation, as it is baseless in any event.

10

he verbally "objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." (DE 11 at ¶ 30). Notably, DIEGO does not claim that he made a complaint to a governmental agency or was providing information or assisting in any investigation of any governmental agency regarding any violation of law, rule or regulation. *See* §§ 448.102 (1) and (2).[7] Subsection 448.102(3), assumes the employee has objected or refused to participate in alleged illegal activities ***directly to the employer*** and does not require written notice for that reason. *See Jenkins v. Golf Channel*, 714 So. 2d 558, 563 (Fla. 5th DCA 1998), *approved*, 752 So. 2d 561 (Fla. 2000). DIEGO's whistleblower claim fails because, by his own admission, he never made ***any*** protected complaint to VICTORY LAB.

Next, DIEGO testified that, after VICTORY LAB "fired" him the first time, he allegedly reported to Senator de la Portilla that "they" were hiring people illegally. (Diego Dep. 24:14-25; 25:1-4). However, after the report to Senator de la Portilla, VICTORY LAB again contracted with DIEGO. (Diego Dep. 25:7-8). So, when DIEGO made this purported complaint to Senator de la Portilla's office assistant, he was neither an employee nor an independent contractor of VICTORY LAB because he was not working for VICTORY LAB in any capacity whatsoever. Thus, in addition to the fact that DIEGO did not make any protected complaint directly to VICTORY LAB, he was not protected by the FWA because he was not working for VICTORY LAB at the time he went to the Senator's office and allegedly made accusations against VICTORY LAB.

---

[7] It is axiomatic that Senator de la Portilla is not a government agency as defined by the statute. *See* § 448.101 (1), Fla. Stat., "Appropriate governmental agency" means any agency of government charged with the enforcement of laws, rules, or regulations governing an activity, policy, or practice of an employer." *Id.* Senator De la Portilla is not charged with enforcing any laws, rules or regulations relating to VICTORY LAB.

11

**C.** **DIEGO's FWA Claim Also Fails Because He Cannot Establish That His Allegations Were Protected Conduct And He Cannot Establish Sufficient Causation.**

To establish a prima facie case under the FWA; a plaintiff must make a three-part showing: (1) that there was a statutorily protected expression; (2) that an adverse employment action occurred; and (3) that there was a causal link between the participation and the adverse employment action." *Pinder v. Bahamasair Holdings Ltd., Inc*., 661 F.Supp.2d 1348, 1351 (S.D.Fla. 2009) (citation omitted); *accord Sierminski v. Transouth Fin. Corp*., 216 F.3d 945, 950 (11th Cir. 2000). Here, DIEGO cannot argue that the first termination of his contract was for protected conduct because he voluntarily quit; and he had not yet made the alleged complaint to the former Senator's office. *See Little v. Foster Wheeler Constructors, Inc*., 09-61003-CIV-SELTZER, 2010 WL 2035546, at *12 (S.D. Fla. May 24, 2010), *aff'd,* 432 Fed. Appx. 907 (11th Cir. 2011) (plaintiff's complaints to Human Resources about sexual harassment and drug abuse in the workplace were not made until April 16; therefore, plaintiff's being sent home on March 30 could not have been retaliatory).

Moreover, it is undisputed that it was not until Ms. Montenegro terminated DIEGO's contract for a second time on September 8, 2016 "for not doing the job well" and because of complaints from other canvassers and the scene at Senator de la Portilla's office, that DIEGO raised the issue that VICTORY LAB was doing something "illegal." Thus, DIEGO also fails to establish the causal link element because his contract was terminated prior to making any complaint directly

12

to VICTORY LAB. VICTORY LAB also had no knowledge of what DIEGO stated at the Senator's office as it was told only that DIEGO had caused a "scene." [8]

First, to establish a claim under the FWA, the decision-maker must be aware of the protected activity. Here, neither Mr. Stone nor Ms. Montenegro were aware of what DIEGO said to the Senator's office. *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir.1997) ("[I]n a case involving a corporate defendant the plaintiff must show that the corporate agent who took the adverse action was aware of the plaintiff's protected expression…."). Second, when the decision to terminate is made prior to the employee engaging in protected activity, causation cannot be established. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006) (holding "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation"); *Powell v. Doane*, 2:12CV440-WHA, 2013 WL 4511935, at *5 (M.D. Ala. Aug. 23, 2013) (granting summary judgment to employer where Powell did not make an Ethics Complaint until after the decision to reassign Powell had been made).[9] So, even if DIEGO could claim his bringing up allegations of illegal canvassers at the termination meeting was a protected complaint, the decision to terminate his contract had already been made.

For all of these reasons, VICTORY LAB is entitled to summary judgment on Count II of DIEGO's First Amended Complaint.

---

[8] VICTORY LAB does not permit canvassers to have direct contact with candidates because of the appearance of improprieties for the PAC.
[9] Claims brought under the FWA are analyzed under the same framework as Title VII retaliation claims. *See Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir.2000).

III.  **CONCLUSION**

For the foregoing reasons, Defendant, VICTORY LAB, INC. is entitled to summary

judgment on Counts I and II of Plaintiff's First Amended Complaint.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 5th, 2017, I electronically served the foregoing
document on all counsel of record identified on the attached Service List in the manner specified,
either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other
authorized manner for those counsel or parties who are not authorized to receive electronically
Notices of Electronic Filing.


By:   */s/ Jacob K. Auerbach*
JACOB K. AUERBACH
FBN: 084003
*Counsel for Defendant*

14

**NABOR DIEGO V. VICTORY LAB, INC**
**CASE NO.: 17-20063-CIV-MORENO**
**SERVICE LIST**

Jacob K. Auerbach, Esq.
**GALLUP AUERBACH**
4000 Hollywood Boulevard
Presidential Circle-Suite 265 South
Hollywood, Florida 33021
T: 954-894-3035
F: 954-894-8015
jauerbach@gallup-law.com
*Counsel for Defendant*
CM/ECF

Anthony M. Georges-Pierre, Esq.
agp@rgpattorneys.com
Rainier Regueiro, Esq.
rr@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler Street
Suite 2200
Miami, Florida 33130
T: 305-416-5000
F: 305-416-5005
*Counsel for Plaintiff*
CM/ECF

15