UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 1:17-cv-20063-FAM

**NABOR DIEGO,**
And other similarly situated individuals,

    Plaintiff(s),

v.

**VICTORY LAB, INC.,**
a Florida Profit Corporation

    Defendant(s).
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS AND PLAINTIFF'S AFFIRMATIVE STATEMENT OF MATERIAL FACTS**

Plaintiff, NABOR DIEGO ("Plaintiff"), pursuant to Fed. R. Civ. P. 56 and the Local Rules of the United States District Court for the Southern District of Florida, hereby submit this Response to the Statement of Material Facts filed by Defendant, VICTORY LAB, INC. ("Defendant"), and states as follows:

**SPECIFIC RESPONSES TO DEFENDANTS' STATEMENT OF FACTS**

1. Plaintiff does not dispute the facts stated in Paragraph 1.

2. Plaintiff disputes the facts stated in Paragraph 2. When Defendant hired Plaintiff, no one told him that the job would end after Election Day. Diego Dep. 23:14-24:2.[1] Defendant's job application for canvassers suggests that candidates are applying for current "and future projects." See "Canvasser Questionnaire," attached hereto as Exhibit B.

3. Plaintiff does not dispute the facts stated in Paragraph 3.

---

[1] "Diego Dep." refers to the Deposition of Nabor Diego, portions of the transcript of which are filed at ECF No. 19-2.

4. Plaintiff disputes the facts stated in Paragraph 4. On his first day with Defendant, Plaintiff was given training by a supervisor so that he would know how to perform his duties as a canvasser. Diego Dec. ¶ 13.[2]

5. Plaintiff does not dispute the facts stated in Paragraph 5.

6. Plaintiff does not dispute the facts stated in Paragraph 6.

7. Plaintiff does not dispute the facts stated in Paragraph 7.

8. Plaintiff does not dispute the facts stated in Paragraph 8.

9. Plaintiff does not dispute the facts stated in Paragraph 9.

10. Plaintiff does not dispute the facts stated in Paragraph 10.

11. Plaintiff disputes the facts stated in Paragraph 11. Plaintiff testified that he did not have any other employers while working for Defendant; occasionally, late at night, he might drive for Uber. Diego Dep. 22:23-23:4. Plaintiff testified further that, while working for Defendant, he did not have time to work any other jobs. Diego Dep. 23:5-10.

12. Plaintiff does not dispute the facts stated in Paragraph 12.

13. Plaintiff disputes the facts stated in Paragraph 13. Once or twice, canvassers were told to meet at Miguel de la Portilla's office. Diego Dep. 27:12-15.

14. Plaintiff disputes the facts stated in Paragraph 14. Some time on or about within the last two weeks of August Plaintiff went to the office of Miguel De La Portilla. Diego Dec. ¶ 19. Plaintiff spoke to an assistant in the office and informed her that Defendant was using undocumented workers as canvassers. Diego Dec. ¶ 20. Plaintiff knew this because one canvasser had asked him to cash her check for her because she had no documentation; Plaintiff refused. Diego Dec. ¶ 21. Plaintiff had a civil conversation with the assistant who informed him

---

[2] "Diego Dec." refers to the Declaration of Nabor Diego, attached hereto as Exhibit A.

that the message would be passed on to the Senator; Plaintiff then left the office. Diego Dec. ¶ 22.

15. Plaintiff disputes the facts stated in Paragraph 15. Plaintiff's wife only once called a coworker and that was Sheryl Smith. Zabaleta Dec. ¶ 5.[3] On that occasion, Sheryl had asked Plaintiff if he could help her move by bringing his truck with him. Zabaleta Dec. ¶ 6. Sheryl was asking that Plaintiff help her move on a Sunday. Zabaleta Dec. ¶ 7. Sundays were the only days Plaintiff had to be with his family, so his wife called Sheryl to inform her that Plaintiff could not help her move on that day. Zabaleta Dec. ¶ 8. Other than this one instance, Plaintiff's wife did not call any of Plaintiff's coworkers for any other reason. Zabaleta Dec. ¶ 9.

16. Plaintiff disputes the facts stated in Paragraph 16. After Plaintiff went to the Senator's office to complain about the undocumented workers, Defendant found out and gave Plaintiff an appointment to meet with his supervisors. Plaintiff understood that the meeting would be with all of the canvassers, but it was for only him. Plaintiff arrived at the designated time but no one else was there. Montenegro and Rodriguez appeared. Plaintiff asked where everyone was because he had been told it was a meeting for everyone. Montenegro told him that the meeting was just for him because they knew that Plaintiff had reported to the Senator's office that Defendant was hiring undocumented workers as canvassers. Rightfully fearing for his job, Plaintiff initially denied the allegations but it was clear Defendant already knew that he had reported the undocumented workers to the Senator's office. Montenegro then told Plaintiff that he was fired. Plaintiff protested saying that what Defendant was doing was illegal and that he had more right to work than the undocumented workers because he was a citizen. Plaintiff stated that he was going to continue to report Defendant's illegal activity. Diego Dep. 25:7-26:15.

---

[3] "Zabaleta Dec." refers to the Declaration of Sara Zabaleta, attached hereto as Exhibit G.

17. Plaintiff disputes the facts stated in Paragraph 17. After Plaintiff went to the Senator's office to complain about the undocumented workers, Defendant found out and gave Plaintiff an appointment to meet with his supervisors. Plaintiff understood that the meeting would be with all of the canvassers, but it was for only him. Plaintiff arrived at the designated time but no one else was there. Montenegro and Rodriguez appeared. Plaintiff asked where everyone was because he had been told it was a meeting for everyone. Montenegro told him that the meeting was just for him because they knew that Plaintiff had reported to the Senator's office that Defendant was hiring undocumented workers as canvassers. Rightfully fearing for his job, Plaintiff initially denied the allegations but it was clear Defendant already knew that he had reported the undocumented workers to the Senator's office. Montenegro then told Plaintiff that he was fired. Plaintiff protested saying that what Defendant was doing was illegal and that he had more right to work than the undocumented workers because he was a citizen. Plaintiff stated that he was going to continue to report Defendant's illegal activity. Diego Dep. 25:7-26:15.

18. Plaintiff disputes the facts stated in Paragraph 18. Plaintiff directly complained about the undocumented workers to Montenegro and Rodriguez on September 8, 2017. Diego Dep. 25:7-26:15.

## PLAINTIFF'S AFFIRMATIVE STATEMENT OF FACTS

19. Defendant employed a regional manager to oversee canvassers, train them, provide technical assistance, and give them materials used in the work they performed for Defendant. Stone Dep. 11:22-25.

20. Defendant required canvassers to agree to various policies including that they should not share their rate of compensation with voters or other employees, and that even a first-time

violation could result in being added to a "do not hire" list. *See* "Code of Ethics and Standards of Practice" attached hereto as Exhibit C.

21. Canvassers were required to agree to various terms of confidentiality with respect to their work for Defendant, including that such obligations would extend even after their employment was terminated. *See* "Confidentiality Agreement" attached hereto as Exhibit D.

22. Canvassers were given handout materials to deliver to the households they were required to visit. Stone Dep. 12:1-3.

23. The handout materials provided by Defendant to canvassers included door hangers and flyers. Stone Dep. 12:10-16.

24. Defendant also provided canvassers with registration forms and name badges for their work. Stone Dep. 12:16.

25. Some regional managers, including Graciela Montenegro, additionally offered notepads, pens, and paper. Stone Dep. 12:17-19.

26. Defendant gave its regional managers an operating budget which included payroll and a separate budget for miscellaneous or supplementary items. Stone Dep. 14:17-22; 17:3-11.

27. The miscellaneous budget was about $200 per month and was used to buy materials that canvassers needed to do their work, such as name tags and water. Stone Dep. 15:1-4; 17:12-19.

28. Defendant employed about 80 canvassers in Miami during the time Plaintiff worked for Defendant. Stone Dep. 17:20-23.

29. Defendant gave canvassers a specified time to meet each morning with their regional manager to pick materials and start working. Stone Dep. 18:10-13. The regional manager would arrange to meet the canvasser at a set location which was adjacent to the canvassing area for that day. Stone Dep. 19:9-14.

30. Defendant uses a GPS tracking system to monitor the hours and work performed by the canvassers it hires. Stone Dep. 18:16-22.

31. Defendant requires its canvassers to have either an iPhone with the iOS operating system or a smart phone with the Android operating system. Stone Dep. 19:2-4.

32. Defendant requires canvassers to download a software application called Campaign Sidekick which records the time, date, and location of each interaction made by the canvassers. Stone Dep. 19:5-7.

33. Defendant admits that it is possible for regional managers to hire undocumented workers. Stone Dep. 24:8-12.

34. Regional managers are given no training or instruction on determining whether canvassers give false information regarding work eligibility. Stone Dep. 25:3-9.

35. Defendant requires canvassers to adhere to a specific dress code. Stone Dep. 28:16-20. The dress code was detailed and specific, and included provisions regarding the necessary type of shoes, pants, hats, and shirts that could be worn; rules about facial hair and hygiene; and the requirement to wear a name badge and campaign t-shirt or sticker, if available. See "Dress Code" attached hereto as Exhibit E.

36. There are no special skills, training, or experience required to be a canvasser. Stone Dep. 46:16-18.

37. Canvassers were subject to restrictive covenants such as being prohibiting from working with other companies similar to Defendant and from soliciting Defendant's employees or accounts. Canvassers were also prohibited from working for Defendant's clients or contracting agents for a period of two years after employment was terminated. See "Independent Contractor Agreement" attached hereto as Exhibit F.

38. Though Defendant's contracts typically revolve around election cycles, it does operate its business—and specifically pursues contracts requiring canvasser services—year-round. Stone Dep. 27:9-12.

Dated: April 19, 2017     Respectfully submitted,

/s/ Rainier Regueiro
Anthony M. Georges-Pierre, Esq.
Florida Bar No. 533637
Rainier Regueiro, Esq.
Florida Bar No. 115578
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler St., Suite 2200
Miami, FL 33130
Telephone: 305-416-5000
Facsimile: 305-416-5005

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 19, 2017 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Jacob K. Auerbach, Esq.
Jacob@aalawllc.com
GALLUP AUERBACH
5521 N. University Drive, Ste 204
Coral Springs, FL 33067
Phone: (954) 894-3035

/s/ Rainier Regueiro
Anthony M. Georges-Pierre, Esq.
Florida Bar No. 533637
Rainier Regueiro, Esq.
Florida Bar No. 115578
